# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
## 2012-1269

SCHAEFFLER GROUP USA, INC.,

Plaintiff-Appellant,

v.

UNITED STATES and
UNITED STATES CUSTOMS AND BORDER PROTECTION

Defendants-Appellees,

and

INTERNATIONAL TRADE COMMISSION,

Defendants-Appellees,

and

THE TIMKEN COMPANY AND MPB CORPORATION,

Defendants-Appellees.

---

Appeal from the United States Court of International Trade in consolidated
case nos. 06-cv-00432, Judge Gregory W. Carman

---

## BRIEF OF PLAINTIFF-APPELLANT SCHAEFFLER GROUP USA, INC.,

Max F. Schutzman, Esq.
Andrew T. Schutz
Kavita Mohan

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP
399 Park Ave., 25th Floor
New York, New York 10022
Tel: (212) 557-4000

Date: August 20, 2014

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
## SCHAEFFLER GROUP v US, 2012-1269

## CERTIFICATE OF INTEREST

Pursuant to Rule 47.4 of the Rules of the U.S. Court of Appeals for the Federal Circuit, counsel for <u>Appellant, Schaeffler Group USA, Inc.,</u> certifies the following:

1.      The full name of every party or *amicus* represented by me is:

<u>Schaeffler Group USA, Inc.</u>

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest)

<u>Not applicable.</u>

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or *amicus curiae* represented by me are:

<u>Schaeffler KG, now known as Schaeffler Holding GmbH & Co. KG, a privately-held German corporation and the parent company of Plaintiff-Appellant, owns a controlling interest in Continental AG, a publicly-held German corporation.</u>

4.      The names of all law firms and the partners or associates that have appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

<u>Max F. Schutzman and Andrew T. Schutz of the law firm Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP appeared in the trial court below and will appear before this Court.  Kavita Mohan did not appear at the trial court but will also appear before this Court.</u>

Date: <u>August 20, 2014</u>            <u>/s/Max F. Schutzman</u>
                                    Max F. Schutzman
                                    Counsel for Appellant

# TABLE OF CONTENTS

I.     **STATEMENT OF RELATED CASES** ........................................................1

II.    **JURISDICTIONAL STATEMENT** ........................................................1

III.   **STATEMENT OF THE ISSUES** ................................................................2

IV.  **STATEMENT OF THE CASE** ....................................................................2

V.    **STATEMENT OF FACTS** .........................................................................4

VI.  **SUMMARY OF ARGUMENT**..................................................................9

VII. **ARGUMENT**.............................................................................................10

     A.    STANDARD OF REVIEW ................................................................10

     B.    THE CDSOA IS UNCONSTITUTIONAL UNDER THE DUE
            PROCESS CLAUSE BECAUSE IT HAS AN IMPERMISSIBLE
            RETROACTIVE EFFECT................................................................10

           1.    THE NATURE AND EXTENT OF THE LAW WAS SIGNIFICANT.......16

           2.    THE DEGREE OF CONNECTION BETWEEN THE OPERATION OF
                 THE NEW RULE AND A RELEVANT PAST EVENT .........................18

           3.    CONSIDERATIONS OF FAIR NOTICE, REASONABLE RELIANCE
                 AND SETTLED EXPECTATIONS ....................................................19

     C.    THE RETROACTIVE EFFECTS OF THE CDSOA ARE NOT
            SUPPORTED BY A LEGITIMATE LEGISLATIVE PURPOSE.....22

VIII. **CONCLUSION AND STATEMENT OF RELIEF**..................................27

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ...........................................................................10

*Canadian Lumber Trade Alliance v. United States*
  425 F. Supp. 2d 1321 (Ct. Int'l Trade 2006).................................. 15, 16

*Chapman Law Firm Co. v. Greenleaf Constr. Co.*
  490 F.3d 934 (Fed. Cir. 2007) ...........................................................10

*E. Enters. v. Apfel*
  524 U.S. 498 (1998) ............................................................ 19, passim

*General Motors Corp. v. Romein*
  503 U.S. 181 (1992) ....................................................................... 11-12

*Greenlee County, Ariz. v. United States*
  487 F.3d 871 (Fed. Cir. 2007) ...........................................................10

*Landgraf v. USI Film Prods*.
  511 U.S. 244 (1994) ............................................................ 11, *passim*

*Lawrence v. Anheuser-Busch*
  523 A.2d 864 (R.I. 1987)....................................................................14

*Martin v. Hadix*
  527 U.S. 343 (1999) ...........................................................................20

*Mojica v. Reno*
  970 F. Supp. 130 (E.D.N.Y. 1997)......................................................23

*Monoson v. United States*
  516 F.3d 163 (3d Cir. 2008) ...............................................................20

*New Hampshire Ball Bearing v. United States*
  815 F. Supp. 2d 1301 (Ct. Int'l Trade 2012)......................................24

*Patlex Corp. v. Mossinghoff*
  758 F.2d 594 (Fed. Cir. 1985) ...........................................................25

*Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*

467 U.S. 717 (1984) ..................................................................... 22-23

*Princess Cruises, Inc. v. United States*
397 F.3d 1358 (Fed. Cir. 2005) ........................................... 16, *passim*

*P.S. Chez Sidney v. U.S. Int'l Trade Comm'n*
2010 WL 4365784 (Fed. Cir. 2010) ........................................................3

*Republic of Austria v. Altmann*
541 U.S. 677 (2004) ............................................................... 13, 14

*Schaeffler Group USA, Inc. v. United States*
808 F. Supp. 2d 1358 (Ct. Int'l Trade 2012) ........................... 4, *passim*

*Sioux Honey Ass'n v. Hartford Fire Ins. Co.*
672 F.3d 1041 (Fed. Cir. 2012) .........................................................10

*SKF USA Inc. v. U.S. Customs and Border Protection*
556 F.3d 1337 (Fed. Cir. 2009) ............................................. 3, *passim*

*SKF USA, Inc. v. United States*
30 C.I.T. 1433 (2006) ........................................................................8

*Tarver v. Shinseki*
557 F.3d 1371 (Fed. Cir. 2009) ..................................................... 18-19

*United States v. Carlton*
512 U.S. 26 (1994) ................................................................. 12, 19

*United States v. Sperry Corp.*
493 U.S. 52 (1989) .........................................................................24

*Usery v. Turner Elkhorn Mining Co.*
428 U.S. 1 (1976) ................................................................ 11, *passim*

*W. Lynn Creamery, Inc. v. Healy*
512 U.S. 186 (1994) .......................................................................15

**Agency Proceedings**

*Antifriction Bearings (Other than Tapered Roller Bearings) and Parts Thereof from France: Initiation of Antidumping Duty Investigation*, 53 Fed. Reg. 15,074 (Apr. 27, 1988) ...................................................................................5

*Antifriction Bearings (Other Than Tapered Roller Bearings) & Parts Thereof From the F.R.G., Fr., Italy, Japan, Rom., Sing., Swed., Thail., & the U.K.*, 53 Fed. Reg. 11,917 (Apr. 11, 1988) ..........................................................5

*Antifriction Bearings (Other Than Tapered Roller Bearings) & Parts Thereof From the F.R.G., Fr., Italy, Japan, Rom., Sing., Swed., Thail., & the U.K.*, USITC Pub. 2185 (May 1989) ....................................................... 5-6

*Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers*, 69 Fed. Reg. 31,162 (June 2, 2004)....................................7

*Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers*, 72 Fed. Reg. 29,582 (May 29, 2007)...............................8

**Constitution**

U.S. Const.amend. V....................................................... *passim*

U.S. Const. art. I, § 9, cl. 3;.................................................11

U.S. Const. art. I, § 10, cl. 1................................................11

**Statutes**

19 U.S.C. § 1675c (2000) ............................................ *passim*

28 U.S.C. § 1295(a)(5)................................................. 1-2

28 U.S.C. § 1581(i) ...........................................................1

28 U.S.C. § 2107(b) ...........................................................2

**Regulations**

19 C.F.R. § 159.61(b) .......................................................26

**Court Rules**

Fed. Cir. R. 47.5 ...............................................................1

Fed. R. App. P. 4(a)(1)(B). ..........................................................................2

USCIT R.8(a)(2) ...........................................................................................10

USCIT R.12(c) ...............................................................................................4

## Other Authorities

16B Am. Jur. 2d Constitutional Law § 692 (1998) ...................................23

Issues and Effects of Implementing the Continued Dumping and Subsidy Offset
    Act, GAO-05-979 (Sept. 2005), available at
    http://www.gao.gov/new.items/d05979.pdf (last accessed Aug. 14, 2014).........17

Report of the Appellate Body, United States- Continuing Dumping and Subsidy
    Offset Act of 2000, WT/DS217/AB/R (Jan. 16, 2003).......................................18

## I.    **STATEMENT OF RELATED CASES**

In accordance with Rule 47.5 of the Rules of the U.S. Court of Appeals for the Federal Circuit, counsel for Plaintiff-Appellant Schaeffler Group USA, Inc. ("Schaeffler") states:

1.  Counsel are not aware of any other appeal in or from the same civil action or proceeding in the lower court or body that was previously before this Court or any other appellate court.

2.  Counsel are aware of two cases currently pending before this Court, and two cases currently pending before the U.S. Court of International Trade ("CIT"), that may directly affect or be directly affected by this Court's decision here. These cases also challenge the retroactive application of the CDSOA. *See Pat Huval Restaurant & Oyster Bar, Inc. v. U.S. International Trade Commission*, Fed. Cir. No. 12-1250; *JTEKT North America Corporation v. United States*, Fed. Cir. No. 13-1399 (stayed pending decision in Fed. Cir. No. 12-1250); *Barden Corp. v. United States*, CIT Consol. No. 06-00435; and *JTEKT North America Corporation v. United States*, CIT No. 14-127 (a motion for stay pending this appeal has been filed before the CIT).

## II.    **JURISDICTIONAL STATEMENT**

The CIT had exclusive subject matter jurisdiction over this action under 28 U.S.C. § 1581(i). This Court has exclusive jurisdiction over this appeal under 28

U.S.C. § 1295(a)(5). This appeal was timely filed on March 14, 2012, i.e., within 60 days of the CIT's final opinion and judgment of January 17, 2012. 28 U.S.C. § 2107(b); Fed. R. App. P. 4(a)(1)(B).

## III.  **STATEMENT OF THE ISSUES**

Whether the government's application of the Continued Dumping and Subsidy Offset Act of 2000's ("CDSOA") petition support requirement to Schaeffler, making cash distributions contingent on speech and conduct that occurred more than a decade before passage of the CDSOA, is impermissibly retroactive in violation of the Due Process Clause of the Constitution.

## IV.  **STATEMENT OF THE CASE**

Between 2006 and 2010, Schaeffler brought a series of Complaints[1] challenging the constitutionality of the CDSOA under the First Amendment, Equal Protection, and Due Process clauses of the U.S. Constitution, and the government's refusal to provide it CDSOA distributions for fiscal years 2004 to 2009.  The cases

---

[1] Compl., CIT Ct. No. 06-00432, Nov. 27, 2006, ECF No. 4 ("Compl. 1"); Compl., CIT Ct. No. 07-00064, Feb. 26, 2007, ECF No. 2 ("Compl. 2"); Compl., CIT Ct. No. 07-00477, Dec. 20, 2007, ECF No. 2 ("Compl. 3"); Compl., CIT Ct. No. 08-00387, Nov. 3, 2008, ECF No. 4 ("Compl. 4"); Compl., CIT Ct. No.10-00048, Feb. 16, 2010, ECF No. 2 ("Compl. 5").

were stayed by the CIT pending the final resolution of other litigation raising the same or similar issues.[2]

Following this Court's decision in *SKF USA Inc. v. U.S. Customs and Border Protection*, 556 F.3d 1337 (Fed. Cir. 2009) ("*SKF USA II*") and *P.S. Chez Sidney v. U.S. Int'l Trade Comm'n*, 2010 WL 4365784 (Fed. Cir. 2010), the CIT ordered Plaintiff to show cause why its cases should not be dismissed. *See* Order, CIT Ct. No. 06-00432, Jan. 3, 2011, ECF No. 31. After Plaintiff responded to the CIT's order, the CIT lifted the stay in each of Plaintiff's cases for all purposes. *See* Order, CIT Ct. No. 06-00432, Feb. 9, 2011, ECF No. 34. The trade court then consolidated Plaintiff's five cases under Consol. Ct. No. 06-00432. *See* Order, CIT Ct. No. 06-00432, Feb 15, 2011, ECF No. 37.

The government moved to dismiss the complaints and for judgment on the pleadings. *See* Defs. The United States and United States Customs and Border Protection's Mot. to Dismiss for Failure to State a Claim upon Which Relief Can Be Granted and for Judgment on the Pleadings, CIT Ct. No. 06-00432, May 4, 2011, ECF No. 60; Def. United States International Trade Commission's Mot. to Dismiss for Failure to State a Claim and For Judgment on the Pleadings, May 2, 2011, ECF No. 56. Defendant Intervenors the Timken Company and MPB Corp.

---

[2] The Court's order stayed the action until final resolution of *Pat Huval Restaurant & Oyster Bar, Inc. v. United States*, Consol. Ct. No. 06-0290. *See* Order, CIT Ct. No. 06-00432, Feb. 23, 2007, ECF No. 23.

(collectively, "Timken") moved for judgment on the pleadings pursuant to USCIT Rule 12(c). *See* Timken's Mot. for J. on the Pleadings, CIT Ct. No. 06-00432, May 2, 2011, ECF No. 58.  Schaeffler also cross moved for judgment on the pleadings. *See* Pl.'s Cross Mot. for J. on the Pleadings, CIT Ct. No. 06-00432,  June 6, 2011, ECF No. 62.

In *Schaeffler Group USA, Inc. v. United States*, 808 F. Supp. 2d 1358 (Ct. Int'l Trade 2012), **JA27**, the CIT dismissed Schaeffler's consolidated action for failure to state a claim upon which relief can be granted.  The CIT dismissed Schaeffler's challenges under the First Amendment and Equal Protection clause based on binding precedent by the holding in *SKF USA II*.  With regard to Schaeffler's Due Process argument, in which Schaeffler argued that the CDSOA is impermissibly retroactive, the CIT dismissed the claim on the basis that the retroactive reach of the petition support requirement of the CDSOA is justified by a rational legislative purpose.  *Id.*  Schaeffler filed a timely appeal to the CIT's judgment.  Schaeffler currently maintains this appeal as to the Due Process Claims regarding the retroactive application of the CDSOA.

## V.    <u>STATEMENT OF FACTS</u>

This cause of action arises out of and is based on events that occurred twelve years prior to the enactment of the CDSOA.  In 1988, the U.S. Department of Commerce initiated an antidumping investigation on antifriction bearings (other

than tapered roller bearings) and parts thereof from the Federal Republic of Germany (now Germany), France, Italy, Japan, Romania, Singapore, Sweden, Thailand and the United Kingdom ("AFBs Investigation"). *See, e.g., Antifriction Bearings (Other than Tapered Roller Bearings) and Parts Thereof from France: Initiation of Antidumping Duty Investigation*, 53 Fed. Reg. 15,074 (Apr. 27, 1988). Concurrently, the ITC initiated its material injury investigation. *Antifriction Bearings (Other Than Tapered Roller Bearings) & Parts Thereof From the F.R.G., Fr., Italy, Japan, Rom., Sing., Swed., Thail., & the U.K.*, 53 Fed. Reg. 11,917 (Apr. 11, 1988) (institution of prelim. investigations).

At the time of the ITC's investigation, Schaeffler was, and still is, a U.S. producer of subject merchandise. Through its predecessor corporate entities INA USA Corporation and FAG Bearings Corporation, Schaeffler actively participated in the investigation and opposed the petition with regard to all countries. *See* Producers' Questionnaires for INA and FAG Bearing Corporation – Preglimininary Phase and Final Phase ITC Investigations, **JA32-JA39**. In its investigation, the ITC determined that there was material injury to the U.S. industry, and declined to exclude any domestic producers, whether or not related to foreign producers, from its analysis of the condition of the domestic industry. *See* Views of the Commission, *Antifriction Bearings (Other Than Tapered Roller Bearings) & Parts*

*Thereof From the F.R.G., Fr., Italy, Japan, Rom., Sing., Swed., Thail., & the U.K.*, USITC Pub. 2185 (May 1989), at 43-44, **JA92-JA93**.

In May 1989, based upon the ITC's finding of material injury, the U.S. Department of Commerce issued antidumping duty orders against certain classes of merchandise from the subject countries, including orders covering ball bearings and parts thereof from Germany, France, Italy, Japan, Romania, Singapore, Sweden, Thailand and the United Kingdom; spherical plain bearings and parts thereof from Germany, France, and Japan; and cylindrical roller bearings and parts thereof from Germany, France, Italy, Japan, Sweden, and the United Kingdom. *See* 54 Fed. Reg. 20,900 – 20,911 (May 15, 1989).

In 2000, Congress passed the CDSOA which required CBP to distribute antidumping duty ("ADD") and countervailing duty "assessments made on or after October 1, 2000" in connection with antidumping or countervailing duty orders in effect on January 1, 1999, among "affected domestic producers" ("ADP"). 19 U.S.C. § 1675c(a) & (e) (2000). To be considered an ADP, the company must have been a U.S. manufacturer/producer that "was a petitioner or interested party in support of the petition" and must have remained in operation. *Id.* at § 1675c(b)(1)(A), (B).  However, even if a company satisfied these two requirements, "companies who have been acquired by a company or business that is related to a company that opposed the investigation shall not be an affected

6

domestic producer." *Id.* Although enacted long after the issuance of the AFB antidumping orders, the CDSOA acts retrospectively such that duties collected pursuant to pre-2000 antidumping orders are available for disbursement to ADPs each fiscal year.

On December 29, 2000, the ITC transmitted to CBP a list of AD and CVD orders in effect as of January 1, 1999 and the petitioners and supporting interested parties in each. **JA112**. Because Schaeffler opposed the petition, it was not on the ADP list. *Id.*

On June 2, 2004, CBP published its notice of intent to distributed duties pursuant to the CDSOA. *See Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers*, 69 Fed. Reg. 31,162 (June 2, 2004). In that notice, CBP stated:

> List of Orders or Findings and Affected Domestic Producers
>
> It is the responsibility of the U.S. International Trade Commission (USITC) to ascertain and timely forward to U.S. Customs and Border Protection (CBP) a list of the affected domestic producers that are potentially eligible to receive an offset in connection with an order or finding.
>
> To this end, it is noted that the USITC has supplied CBP with the list of individual antidumping and countervailing duty cases, and the affected domestic producers associated with each case that are potentially eligible to receive an offset. This list appears at the end of this document

*Id*. There is no official mechanism in the regulations for challenging the ADP designation before CBP. A company may not file certifications for distributions unless it has been designated as an ADP by the ITC. *Id.*

On September 12, 2006, the Court of International Trade issued its decision in *SKF USA, Inc. v. United States*, 30 C.I.T. 1433, 1446-47 (2006) ("*SKF I*"), holding "that the requirement that an entity had to "support" an antidumping petition to be included as an "affected domestic producer" as defined in the CDSOA, 19 U.S.C. § 1675c(b)(1)(A), is a violation of the Equal Protection guarantees under the Fifth Amendment to the Constitution."

On May 4, 2007, Schaeffler sent a letter to the ITC requesting that the ITC revise its "affected domestic producer" list pursuant to the *SKF I* decision and because it was a U.S. producer and was considered as part of the domestic industry by the ITC in the investigation and subsequent reviews. **JA166-JA167**. On May 29, 2007, CBP published its notice of intent to distribute assessed antidumping and countervailing duties (also referred to as an "offset") for fiscal year 2007 entitled *Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers*, 72 Fed. Reg. 29,582 (May 29, 2007) (hereinafter "2007 notice of intent to distribute"). On August 2, 2007, the ITC rejected Schaeffler's request to be added to the ADP. **JA168-JA169**.

As a result of Defendants' administration of 19 U.S.C. § 1675c, Schaeffler has been denied status as an "affected domestic producer" and, consequently, has been deemed ineligible to receive disbursements under the CDSOA.

## VI.  **SUMMARY OF ARGUMENT**

The CDSOA is an impermissibly retroactive statute, in violation of the Due Process Clause of the Constitution.  By making distributions contingent on speech and conduct that occurred decades earlier, the CDSOA imposed a new disability on Schaeffler by providing subsidies to its direct competitors, resulting in competitive harm. There is no rational basis for the retroactive application of the CDSOA's petition support requirement. Making eligibility for current disbursements based on actions that occurred two decades earlier, and which could not have been anticipated as resulting in harm, is not rationally related to any legitimate government purpose. Accordingly, this Court should find the application of the CDSOA's petition support requirement impermissibly retroactive as to Schaeffler, invalidate and sever the CDSOA's petition support requirement, and enter judgment ordering the government to certify Schaeffler as an eligible recipient of CDSOA distributions.

## VII. **ARGUMENT**

### A.    **STANDARD OF REVIEW**

This Court reviews de novo the CIT's dismissal of a complaint for failure to state a claim. *Greenlee County, Ariz. v. United States*, 487 F.3d 871, 877 (Fed. Cir. 2007). Under USCIT Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." A complaint meets that standard if it contains "sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Sioux Honey Ass'n v. Hartford Fire Ins. Co.,* 672 F.3d 1041, 1062 (Fed. Cir. 2012) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). When reviewing the complaint for sufficiency, the Court must "indulge all reasonable inferences" in favor of the plaintiff. *Chapman Law Firm Co. v. Greenleaf Constr. Co.*, 490 F.3d 934, 938 (Fed. Cir. 2007) (citation omitted).

### B.    **THE CDSOA IS UNCONSTITUTIONAL UNDER THE DUE PROCESS CLAUSE BECAUSE IT HAS AN IMPERMISSIBLE RETROACTIVE EFFECT**

Under established Supreme Court precedent, the Due Process Clause limits the government's ability to apply legislation retroactively. The CDSOA as applied to Schaeffler violates this precedent because its eligibility for CDSOA disbursements is based on conduct (i.e., a failure to express support for the AFB

10

petition) that occurred prior to enactment of the CDSOA. As such, the CDSOA as applied to Schaeffler is a violation of the Due Process Clause of the Fifth Amendment to the Constitution.

Several provisions of the Constitution demonstrate that laws with retroactive effect should be viewed with caution. *See, e.g.,* U.S. Const. art. I, § 9, cl. 3; U.S. Const. art. I, § 10, cl. 1 (prohibitions against ex post facto laws which limit the government's ability to impose criminal laws and penalties retroactively and limits to the government's ability to impair the contract rights of individuals retroactively). Likewise, in *Landgraf v. USI Film Prods.*, 511 U.S. 244, 266 (1994), the Supreme Court recognized a prohibition against retroactive lawmaking inherent in the Due Process Clause of the Fifth Amendment:

> The Due Process Clause also protects the interests in fair notice and repose that may be compromised by retroactive legislation; a justification sufficient to validate a statute's prospective application under the Clause 'may not suffice' to warrant its retroactive application.

*Id.*, *citing Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 17 (1976).

There is good reason for this prohibition against retroactive lawmaking. "[R]etroactive statutes raise particular concerns. The Legislature's unmatched powers allow it to sweep away settled expectations suddenly and without individualized consideration." *Landsgraf*, 511 U.S. at 266; *see also General*

*Motors Corp. v. Romein*, 503 U.S. 181, 191 (1992) ("[r]etroactive legislation

presents problems of unfairness that are more serious than those posed by

prospective legislation, because it can deprive citizens of legitimate expectations

and upset settled transactions." ).  Further, as noted by the Court in *Landsgraf*:

> the presumption against retroactive legislation is deeply
> rooted in our jurisprudence, and embodies a legal
> doctrine centuries older than our Republic. Elementary
> considerations of fairness dictate that individuals should
> have an opportunity to know what the law is and to
> conform their conduct accordingly; settled expectations
> should not be lightly disrupted."

*Landsgraf*, 511 U.S. at 266; *see also United States v. Carlton*, 512 U.S. 26, 38

(1994) (O'Connor, J., concurring) ("A period of retroactivity longer than the year

preceding the legislative session in which the law was enacted would raise, in my

view, serious constitutional questions.").

In order to determine whether the law is retroactive, this Court must ask

whether the CDSOA "attaches new legal consequences to events completed before

its enactment." *Landgraf*, 511 U.S. at 270. Before enactment of the CDSOA,

supporting or opposing an antidumping petition did not determine whether a

domestic producer was eligible for CDSOA disbursements. That is, before

enactment of the CDSOA, the antidumping law did not attach any legal

consequences to the domestic producer's decision to support or oppose the

petition.   Thus, the CDSOA constitutes a retroactive law.

Schaeffler could not have anticipated during the AFBs investigation in 1988 that the government would fundamentally alter the companies' speech rights by providing financial benefits only to those producers that supported an antidumping petition. The Supreme Court has stated that the "aim of the presumption [against retroactivity] is to avoid unnecessary post hoc changes to legal rules on which parties relied in shaping their primary conduct." *Republic of Austria v. Altmann*, 541 U.S. 677, 696 (2004). The Court then goes on to quote Justice Scalia's concurrence in *Landgraf*:

> The critical issue, I think, is not whether the rule affects 'vested rights,' or governs substance or procedure, but rather what is the relevant activity that the rule regulates. Absent clear statement otherwise, only such relevant activity which occurs after the effective date of the statute is covered. Most statutes are meant to regulate primary conduct, and hence will not be applied in trials involving conduct that occurred before their effective date. But other statutes have a different purpose and therefore a different relevant retroactivity event.

*Id*. at 698 n.17, quoting *Landgraf*, 511 U.S. at 291 (Scalia, J., concurring).

This Court has held that "the purpose of the Byrd Amendment's limitation of eligible recipients was to reward injured parties who assisted government enforcement of the antidumping laws by initiating or supporting antidumping proceedings." *SKF USA II*, 556 F.3d at 1352.  In other words, this Court has interpreted the purpose of the CDSOA as rewarding companies for their litigation support activities. This purpose directly regulates parties' primary conduct during

13

an antidumping duty investigation.  During the antidumping duty investigations,

Schaeffler relied upon the then-existing legal rules when it decided to "check the

box" and oppose the AFBs antidumping petition. The CDSOA's enactment then

retroactively altered these incentives and imposed "unnecessary post hoc changes

to legal rules on which parties relied in shaping their primary conduct." *Republic of

Austria*, 541 U.S. at 696.

Had Schaeffler imagined such a dramatic altering of the law, its conduct

may have been different and it very likely may have had no choice but to express

support for the antidumping petition, thus avoiding the CDSOA's negative effect.

*See Lawrence v. Anheuser-Busch*, 523 A.2d 864, 871 (R.I. 1987) (retroactive

application of law held "repugnant to due process" because, inter alia, the person to

whom the statute was applied retroactively might have easily altered his conduct

had he known of the potential liability). Thus, the CDSOA impermissibly attaches

liability to conduct that could have been easily altered had Schaeffler known of the

potential liability.

Specifically, the CDSOA attached a new liability as applied to Schaeffler

based on its conduct prior to passage of the CDSOA.  The CDSOA provided

monetary payments to its direct U.S. competitors that engaged in the favored

conduct, while denying such payments to Schaeffler because it did not support the

petition.  This payment resulted in, and continues to result in, direct competitive

injury to Schaeffler. The CIT has found that CDSOA disbursements cause injury to the recipients' direct competitors. "Nor can it be seriously questioned that a direct payment to, i.e., conferring of a subsidy on, a direct competitor may be sufficient to cause increased competition and therefore 'a concrete and particularized injury' that is 'actual or imminent.'" *Canadian Lumber Trade Alliance v. United States*, 425 F. Supp. 2d 1321, 1337 (Ct. Int'l Trade 2006) (*citing, e.g., W. Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, 195 n.10 & 196 n.12 (1994)), aff'd, 517 F.3d 1319 (Fed. Cir. 2008).

In fact, the CIT stated that it is "axiomatic that subsidies harm competitors." *Id.* at 1338 (citing W. *Lynn Creamery*, 512 U.S. at 195 n.10). In a case involving a different aspect of the CDSOA, the CIT found it to be "apparent that the Plaintiffs' sales may be diverted to a competitor that is better able to compete as a result of the Byrd Amendment distributions." *Id.* at 1340. "Relatedly, Plaintiffs' comparative advantage may be undermined thereby reducing the price they may charge (and therefore reducing their own profit margins)." *Id*. This Court affirmed the CIT's decision based on the plain conclusion that CDSOA disbursements prejudice the recipients' competitors in numerous ways. This Court added that "[l]oss of market share is certainly an economic injury, and it is quite rational to infer that Customs, by distributing money to an entity that aims to take away

market share from [Plaintiff] and has already been somewhat successful in that effort, is likely to inflict further economic injury on the [Plaintiff]." *Canadian Lumber Trade Alliance,* 517 F.3d at 1334.[3]

Pursuant to *Landsgraf,* the court makes three inquiries in determining whether a statute is retroactive. *See Princess Cruises, Inc. v. United States*, 397 F.3d 1358, 1364 (Fed. Cir. 2005). First, the Court looks at the nature and extent of the change of the law. Second, the Court considers the degree of connection between the operation of the new rule and a relevant past event. Third, the Court reviews familiar considerations of fair notice, reasonable reliance, and settled expectations. *Id.* at 1362-63, *quoting Landgraf*, 511 U.S. at 269-70. The CDSOA in fact created impermissible effects on Schaeffler under each of these factors.

### 1. THE NATURE AND EXTENT OF THE LAW WAS SIGNIFICANT

The CDSOA profoundly changed the nature of the antidumping law. It changed the regime from a remedial one to a system that subsidized certain domestic products at the competitive expense of others. It immediately and significantly altered the conditions of competition among all domestic producers. The fact that the statute has been continually challenged in U.S. and foreign legal

---

[3] In this regard, Schaeffler's injury is far from hypothetical. As discussed below, its U.S. manufacturer competitors have received CDSOA payments totaling several hundred million dollars.

fora, ruled inconsistent with the United States' international legal obligations, and then repealed by Congress, further indicates that it was a major change in the nature and extent of the law.

The CDSOA not only significantly changed what it meant to be an interested party that supported the petition after its enactment, but it also significantly changed what it meant to be an interested party that supported the petition prior to its enactment. That is, where before the only result of supporting an AD/CVD petition was the hope of the imposition of an order and the hope of better market conditions in the future, after the enactment of the CDSOA, support also meant a significant financial windfall for as long as the order was in effect. For example, The Timken Company, its subsidiary MPB Corporation, and the Torrington Company (acquired by Timken in 2003) received approximately $395 million in CDSOA distributions between 2001 and 2004. *See* Issues and Effects of Implementing the Continued Dumping and Subsidy Offset Act, GAO-05-979, at 29 & n.39 (Sept. 2005), available at http://www.gao.gov/new.items/d05979.pdf (last accessed Aug. 14, 2014). This massive amount of money being redistributed to U.S. producers that supported a particular petition fundamentally changed the focus of the U.S. antidumping law. Indeed, it was such a drastic change in the law and such a significant departure from accepted trade practice that the law was ultimately found contrary to the United States' WTO obligations by the WTO

Appellate Body and repealed by Congress. *See generally* Report of the Appellate Body, United States- Continuing Dumping and Subsidy Offset Act of 2000, WT/DS217/AB/R (Jan. 16, 2003) (finding the measure inconsistent with the Antidumping Agreement and the Agreement on Subsidies and Countervailing Measures as it was a specific action that was other than one of those permissible under these agreements). Thus, at its most basic, the CDSOA categorically changed the economics of the antidumping and countervailing duty law and, in effect, dramatically shifted foreign exporters' and U.S. importers' liability from the U.S. government to the U.S. producer.

### 2.  THE DEGREE OF CONNECTION BETWEEN THE OPERATION OF THE NEW RULE AND A RELEVANT PAST EVENT

The degree of connection between the operation of the new rule and a relevant past event weighs in favor of Schaeffler. There is a direct connection between the CDSOA's petition support requirement and Schaeffler's past opposition to the AFB petition.

The application and operation of the CDSOA to AD/CVD orders issued prior to January 1, 1999 requires a significant and undeniable connection to a past event.  "In determining whether the statute or regulation at issue has a significant nexus to relevant past events," the court looks to "whether the rule affects "primary conduct," i.e., the conduct that gave rise to the suit or claim at issue." *Tarver v.*

*Shinseki*, 557 F.3d 1371, 1375 (Fed. Cir. 2009). Here, that primary conduct is a company's actions and expression of support or opposition to a particular petition.

For distributions made pursuant to the CDSOA for the AFBs orders, the ITC and CBP refer to *actions* and *expressions of viewpoints* that took place *twelve years* prior to the enactment of the CDSOA. In *E. Enters. v. Apfel*, 524 U.S. 498, 537 (1998), the court struck down economic legislation that operated retroactively 30 years to impose liability on a company's activities. The court noted that "the nature of the governmental action in this case is quite unusual." *Id.* As in *Apfel*, Congress' actions here in the enactment of the CDSOA are quite unusual. Not only did the statute fundamentally change the nature of the antidumping law, but it imposed that change on an unlimited retroactive basis in the exact manner Justice O'Connor warned against in *United States v. Carlton*. Accordingly, the lapse of time here between the past event and the enactment of the CDSOA is, on its face, unreasonable, arbitrary and raises substantial fairness questions.

### 3. CONSIDERATIONS OF FAIR NOTICE, REASONABLE RELIANCE AND SETTLED EXPECTATIONS

Finally, considerations of reasonable reliance and settled expectations also favor Schaeffler. Schaeffler had no expectations of this significant change in financial incentives attached to participation in the AFBs investigation. The

CDSOA and its retroactive effects have invalidated, to some extent, Schaeffler's investment-backed expectations of its initial opposition of the petition.

"Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." *Landgraf,* 511 U.S. at 265. When Schaeffler took a position on the original petition, it did so based on a reasonable reliance that its position would be used only in the ITC's injury analysis, and not to competitively burden the company. Schaeffler had settled expectations based on current law and practice that its conduct in opposing the petition alone would not result in financial benefit to its competitors or competitive harm to itself. These considerations were upended by the retroactive application of the CDSOA. *See, e.g., Martin v. Hadix*, 527 U.S. 343, 360 (1999) (declining to apply an attorney fees provision retroactively because to "impose the new standards now, for work performed before the PLRA became effective, would upset the reasonable expectations of the parties."); *Monoson v. United States*, 516 F.3d 163, 168 n.2 (3d Cir. 2008) (distinguishing the importance of parties' expectations in a case such as Landgraf, which involved equitable relief applicable in futuro, and a claim for money damages).

The "economic impact and the "frustration of reasonable, investment-backed expectations [are] a factor[s] to be considered in Fifth Amendment analysis."

*Usery*, 428 U.S. at 23-24. There can be no dispute that the decision to participate in an AD or CVD investigation, either opposing or supporting, is an economic one based on an individual company's analysis of the costs and benefits of the potential imposition of AD/CVD duties on the imports of subject merchandise from a particular country. There can similarly be no dispute that the imposition of an AD/CVD order can fundamentally change the economics of a particular industry.

There is no better example of this than the AFBs Orders given the scope of the orders and the number of countries involved. Indeed, since the issuance of the AFBs Orders, the AFBs industry has changed significantly. Most companies, including Timken, now have a global presence with manufacturing in many different countries. Most of the original opposers of the AFBs petition now have production in the United States as well as production in the countries that were originally the targets of the AD/CVD petitions. In short, the global AFBs industry is unrecognizable from the one analyzed by the ITC in 1988. Speculation is not needed to recognize that had the CDSOA been in effect at the time of the AFBs investigation, the picture of the AFBs industry globally today would look much different. Indeed, had the CDSOA been in effect at the time, Schaeffler may well have supported the petition, rather than opposed it.

Ultimately, what these truths demonstrate is that in the twelve years that passed between the issuance of the AFBs orders and the CDSOA enactment, the

global AFBs industry developed on the expectations of how the administration of the Orders would proceed year after year (i.e., yearly reviews) and their potential financial implications (i.e., AD duties imposed). Based on those expectations, Schaeffler and every other interested party in the industry conducted their business accordingly, making significant investments along the way. The CDSOA's introduction of a monumental financial subsidy based solely on companies' actions in the 1980s was nothing short of unexpected.

Taken together, each of these *Princess Cruises* factors demonstrates that the CDSOA has a considerable retroactive effect. Given the significant change in the law, the expectations and actions that have been disrupted by this retroactive portion of the CDOSA and how much has changed within the AFBs industry since the AFBs orders were issued, there is simply no legitimate government purpose for this retroactive effect. Rewarding parties for the support of government litigation so far in the past does not outweigh the arbitrary and substantial unfairness visited by this retroactivity. Accordingly, the retroactive portion of the CDOSA violates Schaeffler's Due Process rights and should be invalidated.

## C. THE RETROACTIVE EFFECTS OF THE CDSOA ARE NOT SUPPORTED BY A LEGITIMATE LEGISLATIVE PURPOSE

When evaluating a retroactive law under the Due Process Clause, courts examine whether the retroactive application of a statute is supported by a

legitimate legislative purpose. *See Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 729 (1984). In addition, courts will consider whether the person to whom the government is applying the law retroactively could have anticipated the potential liability attached to its chosen conduct and avoided the liability by altering its conduct. *See Usery*, 428 U.S. at 17-18 & n.16; *Mojica v. Reno*, 970 F. Supp. 130, 170 (E.D.N.Y. 1997) (retroactive laws analyzed under due process clause to see if they upset and frustrate expectations), *aff'd* on other grounds, 157 F.3d 106 (2d Cir. 1998). Courts will also examine retroactive legislation to determine whether the legislature is using the legislation as a means of retribution. *See Eastern Enters*., 524 U.S. at 548 (Kennedy, J., concurring and dissenting in part). Finally, courts will examine the degree of retroactive effect. *Id.; see* 16B Am. Jur. 2d Constitutional Law § 692 (1998).

When the CDSOA, as applied to certain producers whose speech and conduct occurred prior to the law's enactment, is evaluated under these factors, it is clear that the law exceeds the Due Process Clause's limitation for retroactive statutes. The retroactive aspect of the CDSOA, as applied to Schaeffler, is not rationally related to a legitimate government purpose. The government does not have a rational basis for determining eligibility for CDSOA disbursements today based on speech and conduct that occurred many years ago. Rewarding speech and conduct that occurred prior to the enactment of the CDSOA will not further the

governmental purposes of preventing dumping or enforcing the trade laws. *See SKF USA II*, 556 F.3d at 1355. Domestic parties must have prior notice of the possibility of CDSOA distributions in order for such distributions (and the eligibility process for receipt thereof) to further these purposes.

For these reasons, the Court improperly dismissed Schaeffler's Fifth Amendment Due Process claims, when it concluded that "the retroactive reach of the petition support requirement in the CDSOA is justified by a rational legislative purpose and therefore is not vulnerable to attack on constitutional due process grounds." *Schaeffler Group USA*, 808 F. Supp. 2d at 1363, *citing New Hampshire Ball Bearing v. United States*, 815 F. Supp. 2d 1301, 1306 (Ct. Int'l Trade 2012). Contrary to the Court's reasoning, it would in fact be entirely "arbitrary or irrational" "for Congress to conclude that the legislative purpose of rewarding domestic producers who supported antidumping petitions . . . would be 'more fully effectuated' if the petition support requirement were applied both prospectively and retroactively." *Id.* For retroactivity due process claims there must be a specific rationale for the retroactive portion of the legislation, and the rationale for other portions of the legislation may not suffice. *United States v. Sperry Corp.*, 493 U.S. 52, 64 (1989). The CAFC has noted that "what Congress can legislate prospectively it can legislate retrospectively," and that the "retrospective aspects of legislation, as well as the prospective aspects, must meet the test of due process,

and the justifications for the latter may not suffice for the former." *Patlex Corp. v. Mossinghoff,* 758 F.2d 594, 602-603 (Fed. Cir. 1985).

This Court found that the CDSOA's purpose was not solely to compensate injured domestic producers, and it was "simply implausible" to use petition support as a proxy for injury. *SKF USA II*, 556 F.3d at 1350-51. Rather, the purpose of the petition support requirement was to reward parties that assisted government enforcement of the trade laws.[4] This legislative purpose – i.e., incentivizing litigation support activities that aid enforcement of the trade laws – is only rationally related to post-enactment orders where domestic producers had notice of the CDSOA's provisions. To reward pre-enactment litigation support activities would be gratuitous and unrelated to the goal of motivating compliance with governmental policy. For orders issued after the CDSOA's enactment, participating domestic producers have complete knowledge of the effect of their support or opposition to a petition. Put simply, they know their rights and the consequences of those rights. In contrast, for orders issued prior to the CDOSA, there could be no reasonable prediction that actions taking in support or opposition would have such drastic consequences in the future. To put it another way, the

---

[4] To be sure, with the exception of petitioner Torrington and its affiliates, the recipients of CDSOA funds here did not "assist the enforcement of the trade laws" any more than those non-recipients such as Schaeffler, who provided the ITC with complete and accurate responses to their questionnaires. Simply checking off a "support" box in a questionnaire response should not be deemed the equivalent of assisting the enforcement of the trade laws.

punishment (being ineligible for CDSOA distributions) does not fit the crime (opposing petition) when at the time, expressing opposition was not a "crime." Thus, rewarding parties for actions so far in the past cannot be rationally related to a legitimate interest in the face of such arbitrary and substantial unfairness caused by this retroactivity. Accordingly, the retroactive portion of the CDSOA violates Schaeffler's Due Process rights and should be invalidated.

In addition, when evaluated to determine whether the law was created as a means of retribution, the CDSOA also fails. The successorship provisions of the law deny CDSOA disbursements to companies that actually supported petitions in a manner that can only be understood as retribution. Specifically, these successor provisions deny any and all CDSOA disbursements, ad infinitum, to any company that supported a petition if it is later acquired by a company that opposed a petition, and to the acquiring company that opposed the petition. [5] In contrast, any other company, such as Timken, that acquires a company that supported a petition is immediately and fully eligible for CDSOA disbursements. *See* 19 U.S.C. § 1675c(b)(1); 19 C.F.R. § 159.61(b). Thus, through the CDSOA, Congress has attempted to exact retribution against certain domestic producers, while lining the pockets of an influential few. *See Landgraf*, 511 U.S. at 267 & n.20 (citing The Federalist No. 44, at 301 (James Madison)).

---

[5] *See* Compl., *Barden Corporation v. United States*, CIT Ct. No. 06-00435, Nov. 28, 2006, ECF No. 4.

Finally, the retroactive effect of the CDSOA is equally offensive to the Due Process Clause because of its severity. In the case of Schaeffler, the CDSOA and Defendants' application thereof are denying a benefit based on speech occurring 12 years prior to enactment. A law under which certain members of the domestic industry (three of which are Timken companies) have received over one half billion dollars (*see* Plaintiff's Cross-Motion for Judgment on the Pleadings, CIT Ct. No. 06-00432, June 6, 2011, ECF No. 62 at 18), but other domestic producers have received nothing, clearly has such a severe retroactive effect that it cannot withstand due process scrutiny. *See, e.g., Eastern Enters.*, 524 U.S. at 549 (law with 35-year retroactive effect "unprecedented [in] scope") (Kennedy, J., concurring and dissenting in part).

## VIII.  <u>CONCLUSION AND STATEMENT OF RELIEF</u>

For the foregoing reasons, the judgment of the CIT should be reversed as to Schaeffler's Due Process claims, and remanded with instructions to enter judgment ordering the government to certify Schaeffler as an eligible recipient of CDSOA distributions.

/s/Max F. Schutzman
Max F. Schutzman
GRUNFELD, DESIDERIO,
LEBOWITZ, SILVERMAN &
KLESTADT LLP

399 Park Ave., 25th Floor
New York, New York 10022
Tel: (212) 557-4000
*Counsel for Schaeffler*

Date: August 20, 2014

CASE PARTICIPANTS ONLY

# ADDENDUM



3 of 12 DOCUMENTS

**SCHAEFFLER GROUP USA, INC., Plaintiff, v. UNITED STATES, UNITED STATES CUSTOMS AND BORDER PROTECTION, and UNITED STATES INTERNATIONAL TRADE COMMISSION, Defendants, and THE TIMKEN COMPANY and MPB CORPORATION, Defendant Intervenors.**

**Consol. Court No. 06-00432**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

*808 F. Supp. 2d 1358*; *34 Int'l Trade Rep. (BNA) 1085*; *2012 Ct. Intl. Trade LEXIS 8*; *SLIP OP. 2012-8*

**January 17, 2012, Decided**

**DISPOSITION:** [**1] Dismissing the consolidated action for failure to state a claim upon which relief can be granted.

**COUNSEL:** Max F. Schutzman, and Andrew T. Schutz, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt, LLP, of New York, NY, for plaintiff.

David S. Silverbrand, and Courtney S. McNamara, Trial Attorneys, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for defendant United States Customs and Border Protection. With them on the briefs were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, Franklin E. White, Jr., Assistant Director, and Andrew G. Jones, Office of Assistant Chief Counsel, United States Customs and Border Protection, of counsel.

Patrick V. Gallagher, Jr., Attorney Advisor, Office of the General Counsel, U.S. International Trade Commission, of Washington, DC, for defendant, U.S. International Trade Commission. With him on the briefs were James M. Lyons, General Counsel, and Neal J. Reynolds, Assistant General Counsel for Litigation.

Geert De Prest, Stewart and Stewart, of Washington, DC,

for defendant intervenors. With him on the brief were Terence P. Stewart, Amy S. Dwyer, and Patrick J. McDonough.

**JUDGES:** Before: Gregory W. Carman, [**2] Judge, Timothy C. Stanceu, Judge, Leo M. Gordon, Judge.

**OPINION BY:** Gregory W. Carman

**OPINION**

[*1359] **CARMAN, JUDGE**: Plaintiff brought five cases [1] challenging the constitutionality of the Continued Dumping and Subsidy Offset Act of 2000 ("CDSOA" or "Byrd Amendment"). [2] These cases were consolidated by order of the Court under Consol. Ct. No. 06 00432. (Order (Feb. 15, 2011), ECF No. 37.) Plaintiff claims that it unlawfully was denied affected domestic producer ("ADP") status, which would have qualified it to receive distributions under the CDSOA. The consolidated case is now before the Court on dispositive motions. Defendants United States Customs and Border Protection ("CBP") and the United States International Trade Commission ("ITC") each move to dismiss Plaintiff's complaints for failure to state a claim upon which relief can be granted pursuant to *USCIT Rule 12(b)(5)*, and for judgment on the pleadings under *USCIT R. 12(c)*. (Defs. The United

808 F. Supp. 2d 1358, *1359; 34 Int'l Trade Rep. (BNA) 1085;
2012 Ct. Intl. Trade LEXIS 8, **2; SLIP OP. 2012-8

States and United States Customs and Border Protection's Mot. to Dismiss for Failure to State a Claim upon Which Relief Can Be Granted and for Judgment on the Pleadings ("CBP Mot."), May 4, 2011, ECF No. 60); (Def. United States International Trade Commission's [**3] Mot. to Dismiss for Failure to State a Claim and For Judgment on the Pleadings ("ITC Mot."), May 2, 2011, ECF No. 56.) Defendant Intervenors the Timken Company and MPB Corp. (collectively, "Timken") move for judgment on the pleadings pursuant to *USCIT Rule 12(c)*. (Timken's Mot. for J. on the Pleadings ("Timken Mot."), May 2, 2011, ECF No. 58.) Plaintiff also cross moved for judgment on the pleadings. (Pl.'s Cross Mot. for J. on the Pleadings ("Pl.'s Mot."), June 6, 2011, ECF No. 62.) For the reasons set forth below, Plaintiff's consolidated action will be dismissed for failure to state a claim upon which relief can be granted.

1  Compl., Ct. No. 06 00432, Nov. 27, 2006, ECF No. 4 ("Compl. 1"); Compl., Ct. No. 07 00064, Feb. 26, 2007, ECF No. 2 ("Compl. 2"); Compl., Ct. No. 07 00477, Dec. 20, 2007, ECF No. 2 ("Compl. 3"); Compl., Ct. No. 08 00387, Nov. 3, 2008, ECF No. 4 ("Compl. 4"); Compl., Ct. No. 10 00048, Feb. 16, 2010, ECF No. 2 ("Compl. 5").

2  Pub. L. No. 106 387, §§ 1001 1003, 114 Stat. 1549, 1549A 72 75 (codified at *19 U.S.C. § 1675c (2000)*), repealed by Deficit Reduction Act of 2005, Pub. L. 109-171, § 7601(a), 120 Stat. 4, 154 (Feb. 8, 2006; effective Oct. 1, 2007).

## BACKGROUND

Plaintiff [**4] Schaeffler Group USA, Inc. ("Schaeffler"), a U.S. producer of antifriction bearings, is the legal successor to two [*1360] U.S. producers of antifriction bearings [3] who participated in a 1988 investigation conducted by the ITC that culminated in the issuance of antidumping duty orders on antifriction bearings and parts thereof from Germany, France, Italy, Japan, Sweden, Romania, Thailand, Singapore, and the United Kingdom. (See Compl. 1 ¶¶ 1, 7.) During those proceedings, Schaeffler responded to the ITC's questionnaires but declined to indicate to the ITC that it supported the antidumping petition. (Id. at ¶¶ 10.) Consequently, the ITC has never included Schaeffler on a published list of ADPs, and, as a result, Schaeffler has never received a CDSOA distribution. (Compl. 1 ¶ 36; Compl. 2 ¶ 36; Compl. 3 ¶¶ 39, 42; Compl. 4 ¶ 39; Compl. 5 ¶ 39.)

3  The Court accepts Plaintiff's undisputed representation that it is the legal successor to INA Bearing Co., Inc. and FAG Bearings Corp., and will refer to these companies interchangeably as "Schaeffler."

Plaintiff brought a series of cases to challenge the government's refusal to provide it CDSOA distributions for fiscal years 2004 through 2009. (Compls. [**5] 1 5, Prayer for Relief.) Shortly after each of Schaeffler's cases was filed, the Court stayed the actions pending final resolution of other litigation raising the same or similar issues. [4] Following the decision of the U.S. Court of Appeals for the Federal Circuit in *SKF USA Inc. v. U.S. Customs and Border Protection, 556 F.3d 1337 (2009)* ("SKF USA II"), the Court ordered Plaintiff to show cause why its cases should not be dismissed. (Order (Jan. 3, 2011), ECF No. 31.) After Plaintiff responded to the Court's order, the Court lifted the stay in each of Plaintiff's cases for all purposes. (Order (Feb. 9, 2011), ECF No. 34.) The Court then consolidated Plaintiff's five cases under Consol. Ct. No. 06 00432. (Order (Feb 15, 2011)). [5]

4  The Court's order stayed the action until final resolution of Pat Huval Restaurant & Oyster Bar, Inc. v. United States, Consol. Ct. No. 06 0290. (See Order (Feb. 23, 2007), ECF No. 23.)

5  CBP has not made any CDSOA distributions affecting this case and indicates that it will refrain from doing so until January 31, 2012 at the earliest. (Def. U.S. Customs & Border Protection's Resp. to the Ct.'s Feb. 14, 2011 Request (Feb. 28, 2011), ECF No. 43.)

## JURISDICTION

The [**6] Court exercises subject matter jurisdiction over this action pursuant to *section 201* of the Customs Courts Act of 1980, *28 U.S.C. § 1581(i)(4)*, which grants the Court of International Trade exclusive jurisdiction of any civil action commenced against the United States that arises out of any law providing for administration and enforcement with respect to, inter alia, the matters referred to in *§ 1581(i)(2)*, which are "tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue." The CDSOA, under which this action arises, is such a law. See *Furniture Brands Int'l, Inc. v. United States, Ct. No. 07*

*00026, 35 CIT ___, ___, 2011 Ct. Intl. Trade LEXIS 131, Slip Op. 2011-132 at 9 15 (Oct. 20, 2011).*

## DISCUSSION

The CDSOA amended the Tariff Act of 1930 to provide for an annual distribution (a "continuing dumping and subsidy offset") of duties assessed pursuant to an antidumping duty or countervailing duty order to affected domestic producers as reimbursements for qualifying expenditures. [6] *19 U.S.C. § 1675c(a) (d).* ADP [*1361] status is limited to petitioners, and interested parties in support of petitions, with respect to which antidumping duty and countervailing duty orders [**7] are entered, and who remain in operation. Id. *§ 1675c(b)(1).* The CDSOA directed the ITC to forward to Customs, within sixty days after an antidumping or countervailing duty order is issued, lists of persons with ADP status, i.e., "petitioners and persons with respect to each order and finding and a list of persons that indicate support of the petition by letter or through questionnaire response." Id. *§ 1675c(d)(1).* The CDSOA also provided for distributions of antidumping and countervailing duties assessed pursuant to existing antidumping duty and countervailing duty orders and for this purpose directed the ITC to forward to CBP a list identifying ADPs "within 60 days after the effective date of this section in the case of orders or findings in effect on January 1, 1999 or thereafter . . . ." Id. The CDSOA directed CBP to publish in the Federal Register, prior to each distribution, lists of ADPs potentially eligible for distributions based on the lists obtained from the ITC, id. *§ 1675c(d)(2),* and to distribute annually all funds, including accrued interest, from antidumping and countervailing duties received in the preceding fiscal year. Id. *§ 1675c(d)(3), (e).*

[6] Congress repealed the [**8] CDSOA in 2006, but the repealing legislation provided that "[a]ll duties on entries of goods made and filed before October 1, 2007, that would [but for the legislation repealing the CDSOA], be distributed under [the CDSOA] . . . shall be distributed as if [the CDSOA] . . . had not been repealed . . . ." Deficit Reduction Act of 2005, Pub. L. No. 109-171, § 7601(b), 120 Stat. 4, 154 (2006). In 2010, Congress further limited CDSOA distributions by prohibiting payments with respect to entries of goods that as of December 8, 2010 were "(1) unliquidated; and (2)(A) not in litigation; or (B) not under an order of liquidation

from the Department of Commerce." Claims Resolution Act of 2010, Pub. L. No. 111-291, § 822, 124 Stat. 3064, 3163 (2010).

The Court of Appeals, in SKF USA II, upheld the CDSOA against constitutional challenges brought on *First Amendment* and equal protection grounds. *556 F.3d at 1360* ("[T]he Byrd Amendment is within the constitutional power of Congress to enact, furthers the government's substantial interest in enforcing the trade laws, and is not overly broad. We hold that the Byrd Amendment is valid under the *First Amendment*."); id. ("Because it serves a substantial [**9] government interest, the Byrd Amendment is also clearly not violative of equal protection under the rational basis standard."). [7]

[7] SKF USA II reversed the decision of the Court of International Trade in *SKF USA Inc. v. United States, 30 CIT 1433, 451 F. Supp. 2d 1355 (2006)* ("SKF USA I"), which held the petition support requirement of the CDSOA unconstitutional on *Fifth Amendment* equal protection grounds.

Plaintiff challenges the constitutionality of Defendants' application of the CDSOA to Schaeffler on three grounds. In Count One, Plaintiff challenges the "in support of the petition" requirement of the CDSOA ("petition support requirement"), as applied, on *First Amendment* grounds. (Compl. 1 ¶¶ 41 43, Compl. 2 ¶¶ 41 43, Compl. 3 ¶¶ 44 46, Compl. 4 ¶¶ 41 43, Compl. 5 ¶¶ 41 43.) In Count Two, Plaintiff challenges the petition support requirement, as applied, on *Fifth Amendment* Equal Protection grounds. (Compl 1 ¶¶ 44 47, Compl. 2 ¶¶ 44 47, Compl. 3 ¶¶ 47 50, Compl. 4 ¶¶ 44 47, Compl. 5 ¶¶ 44 47.) In Count Three, Plaintiff claims that the petition support requirement violates the *Fifth Amendment* Due Process guarantee, in basing Schaeffler's eligibility for disbursements on past conduct, [**10] i.e., support for a petition. (Compl. 1 ¶¶ 48 50, Compl. 2 ¶¶ 48 50, Compl. 3 ¶¶ 51 53, Compl. 4 ¶¶ 48 50, Compl. 5 ¶¶ 48 50.)

In ruling on motions to dismiss made under *USCIT Rule 12(b)(5),* we dismiss complaints that do not "contain sufficient factual matter, accepted as true, to 'state a [*1362] claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)* (quoting *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).* For the reasons set forth below, we conclude that each of the claims in Plaintiff's complaints

in this consolidated action must be dismissed for failure to state a claim upon which relief can be granted.

## I. Plaintiff's Challenges Under the *First Amendment* and the *Equal Protection Clause* Are Foreclosed by Binding Precedent

Plaintiff fails to plead facts allowing the Court to conclude that its as applied *First Amendment* and Equal Protection challenges to the CDSOA are distinguishable from claims brought, and rejected, in SKF USA II. The complaints contain no assertions that the CDSOA was applied to Schaeffler in a different manner than the statute was applied to other parties who did not support a petition. Plaintiff acknowledges that to qualify [**11] as an ADP, it "must have been a petitioner or supported a petition that led to an antidumping or countervailing duty order (which Schaeffler did not.)" (See, e.g., Compl. 1 ¶ 10.) The facts as pled place Schaeffler on the same footing as other potential claimants who did not support the petition, such as SKF. See *SKF USA II, 556 F.3d at 1343* ("Since it was a domestic producer, SKF also responded to the ITC's questionnaire, but stated that it opposed the antidumping petition."). Consequently, because Plaintiff does not allege that there was anything unique about the way the CDSOA was applied to it, Plaintiff's as applied *First Amendment* and Equal Protection challenges in Counts One and Two are foreclosed by the holding in SKF USA II, and must be dismissed pursuant to *USCIT Rule 12(b)(5)* for failure to state a claim upon which relief can be granted.

Plaintiff's argument that the recent Supreme Court cases *Snyder v. Phelps, 131 S. Ct. 1207, 179 L. Ed. 2d 172 (2011)*, and *Citizens United v. Federal Election Commission, 130 S. Ct. 876, 175 L. Ed. 2d 753 (2010)* effectively overturn SKF USA II is wholly unpersuasive. While it is conceivable that intervening Supreme Court precedent could "effectively overrule" a previous circuit [**12] court decision, we are not convinced that such is the case here.

In Snyder, the Supreme Court held that the *First Amendment* provided a valid defense to certain tort liability, because the defendant's speech, while "hurtful," was made in "a public place on a matter of public concern," and was therefore "entitled to 'special protection' under the *First Amendment*." *Snyder, 131 S. Ct. at 1218-20*. We conclude that Snyder has no bearing on the constitutionality of the CDSOA. To conclude otherwise is to ignore the Supreme Court's disclaimer that

> **[o]ur holding today is narrow.** We are required in *First Amendment* cases to carefully review the record, and **the reach of our opinion here is limited by the particular facts before us.** As we have noted, "the sensitivity and significance of the interests presented in clashes between *First Amendment* and [state law] rights counsel relying on limited principles that sweep no more broadly than the appropriate context of the instant case."

*Snyder, 131 S. Ct. at 1220* (quoting *Florida Star v. B.J.F., 491 U.S. 524, 533, 109 S. Ct. 2603, 105 L. Ed. 2d 443 (1989)*) (emphasis added). Plaintiff is incorrect in asserting that the Supreme Court intended in Snyder, "for the first time, [to identify] a discrete [**13] set of guiding principles to determine whether the speech at issue [in this [*1363] case] constitutes 'public speech' subject to strict scrutiny." (Pl.'s Mot. 11.) Because this case does not involve the *First Amendment* as a defense to tort liability for inflammatory speech, nor a question regarding the clash of *First Amendment* and state law rights, the Court finds Snyder inapplicable.

Citizens United is similarly inapplicable. In that case, the Supreme Court invalidated a law that imposed "an outright ban, backed by criminal sanctions" on corporate spending on "electioneering communication," which the Supreme Court regarded as a ban on political speech. *Citizens United, 130 S. Ct. at 897* (stating that the prohibitions at issue were "classic examples of censorship."). While "it might be maintained that political speech simply cannot be banned or restricted as a categorical matter," the Supreme Court noted that at a minimum,"[l]aws that burden political speech are 'subject to strict scrutiny,'" and evaluated the challenged law under that framework. *Id. at 898* (quoting *Federal Election Comm'n v. Wisconsin Right to Life, Inc., 551 U.S. 449, 464, 127 S. Ct. 2652, 168 L. Ed. 2d 329 (2007)*). The statute in Citizens United thus contrasts [**14] sharply with the CDSOA, which "does not prohibit particular speech." *SKF USA II, 556 F.3d at 1350*. This is a critical distinction. As SKF USA II noted, "[s]tatutes that are prohibitory in nature are rarely sustained, and **cases addressing the constitutionality of such statutes are of little assistance in determining the constitutionality of the far more limited provisions of the Byrd Amendment.**" Id. (emphasis added). This

808 F. Supp. 2d 1358, *1363; 34 Int'l Trade Rep. (BNA) 1085;
2012 Ct. Intl. Trade LEXIS 8, **14; SLIP OP. 2012-8

Court agrees; Citizens United is of little assistance.

Therefore, the Court will dismiss Plaintiff's *First Amendment* and Equal Protection claims in Counts One and Two of its complaints for failure to state a claim upon which relief can be granted.

## II. The Petition Support Requirement Does Not Violate the Due Process Guarantee Due to Retroactivity

Count Three of each of Plaintiff's complaints claims that the CDSOA is impermissibly retroactive, in violation of the Due Process guarantee of the *Fifth Amendment*, in basing Schaeffler's eligibility for disbursements on past conduct, i.e., support for a petition. In *New Hampshire Ball Bearing v. United States, 36 CIT , , , 815 F. Supp. 2d 1301, 1306, 2012 Ct. Intl. Trade LEXIS 2, Slip Op. 2012-2, at 8 14 (2012)*, we recently considered a claim essentially identical to Plaintiff's [**15] retroactivity claims. We concluded then that "the retroactive reach of the petition support requirement in the CDSOA is justified by a rational legislative purpose and therefore is not vulnerable to attack on constitutional due process grounds." *36 CIT at , Slip Op. at 14.* We reasoned that "it would not be arbitrary or irrational for Congress to conclude that the legislative purpose of rewarding domestic producers who supported antidumping petitions . . . would be 'more fully effectuated' if the petition support requirement were applied both prospectively and retroactively." *36 CIT at , Slip Op. at 13* (quoting *Pension Benefit Guaranty Corp. v. R.A. Gray & Co., 467 U.S. 717, 730-31, 104 S. Ct. 2709, 81 L. Ed. 2d 601 (1984)).* We conclude, therefore, that Congress did not violate Schaeffler's *Fifth Amendment* due process rights in basing potential eligibility for CDSOA disbursements on a decision on

whether to support the petition that Schaeffler made prior to the enactment of the CDSOA. Based on this conclusion, we will dismiss the Due Process claims in Count Three of the complaints [*1364] for failure to state a claim upon which relief can be granted.

### CONCLUSION

For the foregoing reasons, all claims in the complaints in this [**16] consolidated action must be dismissed for failure to state a claim upon which relief can be granted. [8] Accordingly, we deny Plaintiff's motion for judgment on the pleadings. Plaintiff has not indicated, either in responding to the Court's order to show cause or in opposing the motions to dismiss, that there is a plausible basis for Plaintiff to seek leave to amend the complaints, and we see no such basis. Therefore, the Court shall enter judgment dismissing this action.

[8] Because the Court is granting Defendants' motions to dismiss, the Court does not need to reach Defendants' and Defendant Intervenors' motions for judgment on the pleadings. Moreover, since the Court finds no merit in any of Plaintiff's claims, the Court has no reason to entertain Defendant Intervenors' arguments regarding the statute of limitations or failure to exhaust administrative remedies.

/s/ Gregory W. Carman

Gregory W. Carman, Judge

Dated: January 17, 2012

New York, New York

# CERTIFICATE OF COMPLIANCE

**1.** This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 28.1(e)(2) and 32(a)(7)(B).

**2.** This brief contains 6,179 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

**3.** This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6).

**4.** This brief has been prepared in a proportionally spaced type face using Word 2010 in Times New Roman 14 point font.

/s/Max F. Schutzman

Max F. Schutzman
GRUNFELD,DESIDERIO,
LEBOWITZ, SILVERMAN &
KLESTADT LLP
399 Park Ave., 25th Floor
New York, New York 10022
Tel: (212) 557-4000
*Counsel for Schaeffler*

Date: August 20, 2014

# CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of August, 2014, a copy of the foregoing **BRIEF OF PLAINTIFF-APPELLANT SCHAEFFLER GROUP USA, INC.,** was filed electronically. I understand that notice of this filing will be sent to all counsel of record by operation of the Court's electronic-filing system. Parties may access this filing through the Court's system.

/s/Max F. Schutzman
Max F. Schutzman
GRUNFELD,DESIDERIO,
LEBOWITZ, SILVERMAN &
KLESTADT LLP
399 Park Ave., 25th Floor
New York, New York 10022
Tel: (212) 557-4000
*Counsel for Schaeffler*

Date: August 20, 2014